UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re:
RICHARD B. BRADLEY                     Case No. 13-01390
GLENDA S. BRADLEY,
    *Debtors*.

**ORDER DENYING TRUSTEE'S MOTION TO DISMISS CHAPTER 7 CASE PURSUANT TO 11 U.S.C. § 707(B)(2)**

    Brenda Drendel Hetrick, Attorney for Debtor, Mobile, AL
    Terrie Owens, Chapter 7 Trustee, Mobile, AL

This case is before the Court on the Trustee's Motion to Dismiss the Debtors' chapter 7 case pursuant to 11 U.S.C. § 707(b)(2). The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This matter is a core proceeding pursuant to 28 U.S.C. § 157 and the Court has the authority to enter a final order. For the reasons indicated below, the Court is denying the Trustee's Motion to Dismiss.

**FACTS**

On April 24, 2013, Richard B. and Glenda S. Bradley (the "Debtors") filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, Case No. 13-01390. At the time of their filing Mr. Bradley was employed as a teacher and Mrs. Bradley as a nurse. The Debtors continue to be employed in these positions. With their petition the Debtors filed a Chapter 7 Statement of Current Monthly Income and Means Test Calculation. Their annualized current monthly income is $99,923.64. The Debtors' three minor children live with them and are dependents making their household size five. The applicable median family income for a household of five is $72,800. The Debtors' monthly disposable income under the Means Test is $799.33. Their 60-month disposable income is $47,959.80 which is above the threshold amount

1

listed in 11 U.S.C. § 707(b)(2)(A)(i)(II).  Thus, a presumption of abuse arises under the Means Test.

The Debtors live a modest lifestyle.  Their 2,347 square foot home is valued at $135,000 and their mortgage payment is $820.00 per month.  Their family of five spends about $1,500 a month on food and clothing which is less than the IRS standards of $1,731.  The Debtors maintain two vehicles—a 1994 Jeep Wrangler and a 2007 Ford Freestyle.  Their car payments are $245 per month and $222 per month respectively which is less than the IRS and local standards.

By far, the Debtors' single largest unsecured debt is their combined student loan debt of $114,792.  Mr. Bradley's student loans, which total $25,005, have been consolidated and extended to a 15 year repayment plan.  Mrs. Bradley's loans, which total $79,418, have not been consolidated. She has 10 years remaining on her repayment plan.  Their student loan payment totals $1,126.00 per month which exceeds their monthly disposable income under § 707(b)(2). This debt is nondischargeable.  Even if Mrs. Bradley were able to consolidate her loans at her current interest rate of 6.8% and extend the repayment period from 10 to 15 years, her monthly payment would only be reduced from $892 to $705.  The required payment would still exceed the Debtors' monthly disposable income by $139.67.

## LAW

Under § 707(b)(1), a court may dismiss a case upon a finding that relief under chapter 7 would be an abuse of the provisions of chapter 7.  Under § 707(b)(2), a presumption of abuse arises "if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of: (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,025, whichever is greater; or (II)

2

$11,725." If a presumption of abuse arises, the Debtor bears the burden of rebutting the presumption by showing that "special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances . . . justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative" exist. 11 U.S.C. 707(b)(2)(B)(i). The Code does not define the term "special circumstances." While the Code lists "serious medical condition" and a "call or order to active duty" as illustrations of circumstances that would be deemed "special," it does not limit the term "special circumstances" to these situations.

Because the term "special circumstances" is ambiguous, the Court looks to the legislative history of the Act to flesh out the legislature's intent. Of particular relevance is the fact that the Senate "Committee adopted the 'special circumstances' standard, rather than the 'extraordinary circumstances' standard included in the Conference Report to accompany H.R. 3150 to provide a different standard of when a debtor may overcome the presumption of abuse." S. REP. No. 106-49, at 7 (1999). This standard was intended to be a "significant, meaningful threshold which a debtor must satisfy in order to receive [] preferential treatment." *Id.* However, the Committee's use of the term "special" rather than "extraordinary" reveals that the drafters did not intend to make it exceedingly onerous for a debtor to establish "special circumstances." In fact, the Committee's retreat from the term "extraordinary" suggests that there may be seemingly "ordinary" expenses that are "special" in the context of a bankruptcy filing.

The Committee stressed that "special circumstances adjustments must not be used as a convenient way for debtors to choose a more expensive lifestyle." *Id.* Rather, the debtor's "special circumstances" must show that he or she "in fact does not have a meaningful ability to repay his or her debts." *Id.*

Courts have split over whether nondischargeable student loan debt is a "special circumstance" under 707(b)(2)(B)(i). Several courts have employed a "fact-specific, case-by-case inquiry into whether the debtor has a 'meaningful ability' to pay his or her debts in light of an additional expense . . . not otherwise reflected in a means test calculation." *In re Knight*, 370 B.R. 429, 437 (Bankr. N.D. Ga. 2007) (quoting *In re Delbecq*, 368 B.R. 754, 756-59 (Bankr. S.D. Ind. 2007) which quotes S. Rep. No. 106-49, at 1 (1999). The *Knight* court found that "[a] special circumstance is one that, if the debtor is not permitted to adjust her income or expenses accordingly, results in a demonstrable economic unfairness prejudicial to the debtor." *Id.* At 437-38. "[D]epending on the facts, student loan repayments can constitute 'special circumstances.'" *In re Sanders*, 454 B.R. 855, 858 (Bankr. M.D. Ala. 2011). Other courts have found that student loans generally do not qualify as "special circumstances." *See In re Siler*, 426 B.R. 167 (Bankr. W.D. N.C. 2010); *In re Carrillo*, 421 B.R. 540 (Bankr. D. Ariz. 2009); *In re Fonash*, 401 B.R. 143 (Bankr. M.D. Penn. 2008); *In re Pageau*, 383 B.R. 221 (Bankr. D. N.H. 2008).

Two Alabama bankruptcy cases have recently addressed this issue. Both found that under proper facts, student loan payments could be considered "special circumstances." In *In re Sanders*, the debtors were either directly or on a guarantor basis liable for their son's student loan debt which totaled $236,672.25. 454 B.R. at 856-57. While their monthly disposable income was $1,196.91, the loan payment was $2,041.61 per month. *Id.* at 856. Though their son was employed, he earned only $35,000 and, therefore, was unable to make the loan payment each month. *Id.* at 861. After analyzing three distinct approaches courts have taken in addressing this issue, the *Sanders* court determined that student loans can constitute "special circumstances" under the Code and that, under the facts of the case, the debtors' student loan obligations did constitute "special circumstances." *Id.* at 861-62.

4

The *Sanders* court identified important reasons for its decision. First, forcing the debtors to defer loan payments or extend the length of the loan under a Chapter 13 plan would require them to incur even more student loan debt—an outcome the court did not find to be a reasonable alternative to a chapter 7 proceeding. *Id.* at 862. Second, public policy supports and encourages people to obtain higher education degrees. However, few people can afford such degrees outright. *Id.* Therefore, student loan debt serves an important and, in many cases, necessary function.

Another Alabama bankruptcy court has similarly ruled that student loan debt can qualify as a "special circumstance." In *In re Edwards*, the debtors sought to have their $200,000 student debt deemed a "special circumstance." 2012 WL 3042233 (Bankr. N.D. Ala.). As in the *Sanders* case, the debtors' monthly loan payment exceeded their monthly disposable income. While the court found that "in some cases, even applying a strict construction of the statute, student loan payments may constitute special circumstances," it did not find that the debtors had established that *their* student loan debt was a "special circumstance." *Id.* at 6.

The *Edwards* court pointed to the debtors' expensive lifestyle, their refusal to make a good faith effort to live within their means, and their continuing to incur debt and make poor financial decisions even after filing bankruptcy as reasons for finding that their nondischargeable student loan debt did not constitute a "special circumstance." Specifically, the debtors bought a home for about $300,000 at a time when they already had credit card debt, student loan debt, and personal loans. They refinanced their second mortgage, intentionally borrowing more than the home was worth to pay off other debts. At the time of filing, they owed about $341,000 on their home which had an appraised value of only $260,000. Further, the debtors incurred debt to furnish their home; they loaned money they did not have to a family member; and they bought

5

new vehicles before filing their petition. Their new monthly car payment was $872. Debtors could have bought more modest cars and received a lower monthly car payment. In addition, debtors were both still in school incurring even more student debt at the time of filing. In fact, debtors were taking out student loans in excess of the cost of tuition. The court found that the extra student loan money was "being used to help fund Debtors' living expenses" which the court deemed excessive. *Id.* at 7. In light of the foregoing, the *Edwards* court ruled that the debtors' student debt was not a "special circumstance" that should be accounted for in the means test.

The facts of this case more closely resemble the facts in *Sanders* and are clearly distinguishable from the facts in *Edwards*. Unlike the *Edwards* case, the Debtors have shown a good faith effort to live within their means. They live in a modest home and drive modest vehicles. Their monthly expenses for food and clothing are below IRS and local standards. The Debtors' monthly student loan payment is $1,126 while their monthly disposable income is only $799.33. Even if the Debtors are able to consolidate Mrs. Bradley's student loans at the same interest rate and extend her repayment period to 15 years, their monthly student loan payment will still exceed their disposable income by $139.67. Thus, the Court finds that the Debtors do not have a "meaningful ability" to pay their debts.

The Debtors' financial situation will continue to worsen if they are not permitted to file a chapter 7 case. Like the debtors in *Sanders*, if the Bradleys are forced to convert their case to a chapter 13, they would likely have to further defer or reduce student loan payments in order to pay other unsecured creditors. This would extend the life of their student loans at a minimum of 6.8% interest. Essentially, a chapter 13 case would force the Debtors to incur even more

6

nondischargeable student loan debt. The Court does not find the Debtors' further assumption of student debt to be a "reasonable alternative" to a chapter 7 proceeding. *See Delbecq* at 759.

Therefore, the Court finds that the Debtors' nondischargeable student loan debt constitutes a "special circumstance" under 707(b)(2)(B)(i).

For the reasons set forth above, IT IS ORDERED that the Trustee's motion to dismiss is DENIED.

Dated: August 30, 2013

_____
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE

7

Case 13-01390    Doc 31    Filed 08/30/13    Entered 08/30/13 14:15:07    Desc Main
Document      Page 7 of 7